IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00956-PAB-KLM

The Western Sugar Cooperative,

    Plaintiff,

v.

Richard Dorn and Dorn AgCo, LLC,

    Defendants.

---

**PLAINTIFF'S MOTION PURSUANT TO FED. R. CIV. P. 56(d)**

---

Plaintiff, The Western Sugar Cooperative ("the Cooperative"), by and through its attorneys Baker & Hostetler LLP, moves the Court pursuant to Rule 56(d) of the Federal Rules of Civil Procedure ("Cooperative's Rule 56(d) Motion") to (1) deny or defer Plaintiffs' premature Rule 56(a) Motion for Summary Judgment (Doc. 28) ("Defendants' MSJ"), and (2) staying briefing on Defendants' MSJ.[1]

## PROCEDURAL HISTORY

This case was removed to this Court by Defendants on April 6, 2020 (Doc. 1). Defendants filed their Answer, Counterclaims, and Jury Demand on May 4, 2020 (Doc. 15). The Cooperative filed its Answer to Defendants' Counterclaims on June 6, 2020 (Doc. 20), and a Partial Motion to Dismiss Defendants' Sixth Counterclaim for Conversion pursuant to Fed. R. Civ. P. 12(b)(6) the same day (Doc. 19). That motion has been fully briefed. Docs. 26 and 27. On June 22, 2020, the Cooperative requested a continuance of the Scheduling Conference because of a death in the family (Doc. 21), which was granted (*Minute Order,* Doc. 23). The Scheduling Conference was rescheduled to September 21, 2020. On July 30, 2020, counsel for Plaintiff and counsel for Defendants attended a Rule 26(f) conference via telephone. On September 4, 2020, Defendants filed their Motion

---

[1] Plaintiff conferred with counsel for Defendants. Defendants oppose this motion.

for Summary Judgment as to all of Plaintiff's claims. On September 14, the parties submitted a proposed Scheduling Order. Doc. 32. On September 17, the Court entered a Stipulated Protective Order. Doc. 37.

**PRELIMINARY STATEMENT**

Plaintiff opposes Defendants' MSJ as premature and intended to thwart discovery and the development of evidence that will be critical to the resolution of the issues involved in this matter. Although this case is in its infancy, Defendants' MSJ relies heavily on dramatic rhetoric (e.g. "death…injustice…oppress[ion]…modern day peonage…*in terroem*")[2] and purports to advance public policy arguments. However, Defendants' MSJ focuses entirely on how the contract *theoretically* applies to Mr. Dorn and Dorn AgCo without regard to its impact on the other grower owners of the Cooperative for whose mutual benefit the Cooperative was established, in large measure through Mr. Dorn's efforts. Before the Court rules on Defendants' MSJ, for the reasons set forth herein, discovery is necessary for the Cooperative to fully address the Defendants' arguments, and for the Cooperative to be able to present the "full story" to the Court. Although Defendants' frame their motion and because this case could have wide-ranging implications for the Cooperative and the sugar beet industry in the region. Accordingly, the Cooperative respectfully opposes any ruling on Defendants' Motion for Summary Judgment (Doc. 28) until after there has been a fair opportunity for discovery and after expert disclosures have been exchanged in this case.

**STANDARD OF REVIEW**

1. The Tenth Circuit has set forth the standard of review for Rule 56(d) motions as follows:

> "[S]ummary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Requests for further discovery should ordinarily be treated liberally. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992). But relief under Rule 56(d) is not automatic. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1264 (10th Cir. 2006).

---

[2] *See* Doc. 28, p. 1, Introduction.

2

> To obtain relief under Rule 56(d), the movant must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment. *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010); Burke, 462 F.3d at 1264.

*Cerveny v. Aventis, Inc.,* 855 F.3d 1091, 1110 (10th Cir. 2017).

## ARGUMENT

2. This is a case regarding Defendants' obligations as a shareholder of The Western Sugar Cooperative. *See generally*, Complaint [Doc. 1]. As set forth in the Complaint, each shareholder has an obligation to grow sugar beets related to the number of Patron Preferred Shares owned. *Id.* Failure to provide that quantity of sugar beets to the Cooperative for processing into sugar subjects the shareholder to the assessment of liquidated damages the shareholder's failure to fulfill delivery obligations is not excused by *force majeure*.

3. Section 502 of the Cooperative Act provides that "Cooperatives limiting membership to agricultural producers may make and execute marketing or purchasing contracts requiring the members to sell or purchase, for any period of time not over ten years…."[3] C.R.S. § 7-56-502. The Cooperative's Shareholder's Agreement is

---

[3] The provision relating to the length of a marketing contract in the Colorado Cooperative Act, C.R.S. 7-56-502, is similar to the provisions in Cooperative Acts of twenty-one states and the District of Columbia. Similar to Colorado, marketing contracts may be for "any period of time, not over ten years" in **Alabama** (Ala. Code § 2-10-65); **Connecticut** (Conn. Gen. Stat. Ann. § 33-212); Florida (F.S.A. §618.17) ("any period of time"); **Georgia** (Ga. Code Ann. § 2-10-101(a)); **Idaho** (Idaho Code Ann. § 22-2617); **Indiana** (Ind. Code Ann. § 15-12-1-34(a); **Kansas** (Kan. Stat. Ann. § 17-161(a)); **Louisiana** (La. Stat. Ann. § 3:136(A)); **Massachusetts** (Mass. Gen. Laws Ann. ch. 157, § 16); **Mississippi** (Miss. Code. Ann. § 79-19-31); **Missouri** (Mo. Ann. Stat. § 274.200); **Montana** (Mont. Code Ann. § 35-17-401(1)); **New Hampshire** (N.H. Rev. Stat. Ann. § 301:31); **North Carolina** (N.C. Gen. Stat. Ann. § 54-152(a)); **Ohio** (Ohio Rev. Code Ann. § 1729.67(B)); **Rhode Island** (7 R.I. Gen. Laws Ann. § 7-7-6(7)); **South Carolina** (S.C. Code Ann. § 33-47-1110); **Tennessee** (Tenn. Code Ann. § 43-16-133); **Texas** (Tex. Agric. Code Ann. § 52.016(a)); **Vermont** (Vt. Stat. Ann. tit. 11C, § 703); **Virginia** (Va. Code Ann. § 13.1-329(a)); and **Wyoming** (Wyo. Stat. Ann. § 17-10-121(a)). Nine other states have similar provisions but with no or different durational periods. *See e.g.*, **Alaska** (A.S. §10.15.215) (no years referenced); **Arkansas** (A.C.A. §2-2-116) (no years referenced); **California** (Ca. Food & Ag. Code §54261 (15 years); **Illinois** (805 ILCS 315/18) ("any period of time"); **Michigan** (M.C.L.A. §450.108) (no years referenced); **Nevada** (N.R.S. § 81.120) (no years referenced); **North**

3

for a term of one year and complies with the statute. The Colorado statute and similar statutes in thirty (30) other states neither prohibits making the annual contract automatically renewable nor requires that members have the right or ability to terminate their membership and with it the obligation to provide product to the cooperative represented by their shares.   In those states, including Colorado, a member can withdraw from the Cooperative by transferring shares to another eligible grower to ensure that the obligation to provide the agricultural product represented by those shares is preserved and maintained.   It is the North Dakota sugar beet cooperative Minn-Dak Farmer's Cooperative whose growers' agreement provided the model for the durational provision in the Cooperative's Shareholder Agreement.[4]

4. Unlike Colorado and the 29 other states referenced in footnote 3, certain states enacted cooperative statutes that have durational provisions but expressly provide for the right of a shareholder to terminate, a provision that is absent in the Colorado statute but that Defendants seek to read into the Colorado Cooperative Act.[5] Although, as noted in Defendants' MSJ, the Colorado Cooperative Act carried forward certain provisions present in the 1923 Act, the provisions of other state acts were considered and adopted or rejected as not being best suited

---

**Dakota** (NDCC §10-15-59) (no years referenced); **Oregon** (O.R.S. §62.355) (no years referenced); **West Virginia** (W. Va. Code § 19-4-16) (20 years).

[4] *Luft Farms LLC and Alan Reuter v The Western Sugar Cooperative*, Civil Action No. 1:08-cv-02014-WYD-CBS (U.S.D.C. D. Colorado, Feb. 20, 2009 )("*Luft Farms* Litigation") Order ("In addition, Defendant has submitted 'evidence that Minn-Dak Farmers' Cooperative - a sugar beet cooperative located in Wahpeton, North Dakota - has a Growers Agreement with automatic renewal, amendment, termination, share transfer, and liquidated damage provisions similar to those of the Cooperative.'").

[5] Unlike Colorado, certain states have specifically provided in the durational provision the ability of a cooperative member to terminate the relationship.  Those states include: **Arizona** (A.R.S. § 10-2016); **Delaware** (Del. Code Ann. tit. 3, § 8541); **Hawaii** (Haw. Rev. Stat. Ann. § 421-18); **Iowa** (I.C.A. §501A.603); **Kentucky** (Ky. Rev. Stat. Ann. § 272A.7-030); **Maryland** (MD CPRP & ASSNS §5-522); **Minnesota** (Minn. Stat. Ann. §308B.311, Subd. 3);  **Nebraska** (Ne. Rev. Stat. Ann. § 21-2951); **New Mexico** (N.M.S.A. 1978 § 76-12-16); **New Jersey** (N.J. Stat. Ann. § 4:13-27); **New York (**N.Y. Coop. Corp. Law § 70(1)); **Oklahom**a (2 Okla. Stat. § 17-17);  **Pennsylvania** (15 Pa. Stat. and Cons. Stat. Ann. § 7534(a)); **Utah** (U.C.A. 1953 §3-1-17); and **Wisconsin** (Wis. Stat. Ann. § 185.41).

4

to Colorado's agricultural economy.[6] A shareholder of The Western Sugar Cooperative is obligated to provide sugar beets for processing each year under the annual contract unless and until the shareholder transfers its shares to another eligible grower. This ensures a steady and constant supply of sugar beets to be processed in the Cooperative's factories for the mutual benefit of all shareholders. Although the Dorns argue that the automatic renewal provision runs afoul of Colorado's permissive period of ten years, it has no bearing on this situation as the Dorns have not failed and refused to execute an annual contract for a period in excess of ten years. In fact, Defendant Dorn AgCo, LLC, has not even been a shareholder of the Cooperative for ten years. In short, the Dorns are asking the Court to declare that the automatic renewal provision is invalid because it *could* violate public policy, but not because it actually has in this case.

5. The Cooperative's Shareholder Agreement and governing documents comply with the Colorado Cooperative Act and this Court should not read into the statute provisions the General Assembly did not see fit to include. That said, for the reasons set forth herein and in the supporting Declaration of Marc D. Flink ("Flink Decl."), the Court should defer or deny the Defendants' MSJ until such time as the Cooperative can conduct discovery and designate experts. This additional time will allow the Cooperative to present this Court with all pertinent facts and considerations which are applicable in the Dorns' situation and the larger context of a New Generation Cooperative ("NGC"). Pre-discovery summary judgments should be rare. *See 11 Moore's Federal Practice – § 56.100[1][fn.3]* (citing *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 303-304 (2d Cir. 2003) and quoting

---

[6] *See The New Colorado Cooperative Act: A Setting for a Business Structure*, 25 Dec. Colo. Law. 3: "The Colorado Cooperative Act is the culmination of a four-year project inaugurated by the Colorado Cooperative Council, an association of agriculturally related cooperatives. The Council commissioned first drafts of a new statute from the National Center of Agricultural Law Research and Information ('NCALRI') in Fayetteville, Arkansas. The NCALRI was commissioned to review new cooperative statutes that had been adopted in other states (such as Arkansas, Kansas, Minnesota, Oregon, South Dakota, Wisconsin, and Utah) and to draw on the best provisions of these statutes. After critiquing the drafts, the Council requested the Agricultural and Rural Law Section of the Colorado Bar Association to undertake development of a broad-based cooperative statute.").

5

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.")).

### FACTS THAT ARE MATERIAL AND RELEVANT TO THIS DISPUTE

6. As set forth in the Complaint, Richard Dorn incorporated the Rocky Mountain Sugar Growers Cooperative ("RMSGC") nka the Cooperative and he was instrumental in soliciting other sugar beet farmers to join the Cooperative and in establishing the Cooperative's contractual relationship with its shareholders. Mr. Dorn now seeks to void and declare those annual contractual obligations unenforceable because he and his son no longer wish to fulfill their obligations. *See generally*, Complaint [Doc. 1] ; *see also* Exhibit C to Defendants' MSJ, Dorn Declaration ¶15 [Doc. 28-3] ("Based on my desire to retire from farming, I did not execute the 2019 Shareholder Agreement on behalf of myself. I also decided after discussions with my son, who is the other member of AgCo, that AgCo would also not execute the 2019 Shareholder Agreement.").

7. On September 4, 2020, Defendants Richard Dorn and Dorn AgCo, LLC filed a Motion for Summary Judgment ("Defendants' MSJ") requesting that the Court enter summary judgment against the Cooperative as to each of the Cooperative's claims. Although the Defendants' Counterclaims relating to the renewal and liquidated damages provisions of the Shareholder Agreement and corporate governing documents at issue are mirror images of many of the Cooperative's claims, the Defendants have not sought summary judgment as to their counterclaims. Flink Decl. ¶ 3.

8. The facts as shown in the supporting Declaration of Marc D. Flink lead to the reasonable inference that Defendants' filing of their premature summary judgment motion was intended preclude discovery by the Cooperative with respect to its claims and the counterclaims asserted by the Defendants. Granting the relief Defendants seek when Plaintiff has taken no discovery in this case would be antithetical to the notions of fairness, justice, and due process.

9. The parties have exchanged initial disclosures. The Scheduling Conference is scheduled for September 21, 2020. The proposed Scheduling Order submitted to the Court on September 14, 2020 and not yet entered by the Court provides for a discovery cut-off date of May 21, 2021 and an expert disclosure date of February 19, 2021. Flink Decl. ¶ 4.

10. This is not a situation where a party has sat on its hands in discovery and is now attempting to conduct new discovery. *Cf. Diversant, LLC v. Carino*, 2018 U.S. Dist. LEXIS 165012 *21 (D. N.J. Sept. 24, 2018). As of the filing of this motion, no discovery has been undertaken by any party. Flink Decl. ¶ 5.

11. To the extent that the Court does not summarily deny the Defendants' premature motion for summary judgment, for the reasons set forth in the Declaration of Marc D. Flink, the Cooperative requests that the Court stay briefing on the Defendants' MSJ and defer consideration of the Defendants' MSJ until such time as the Cooperative can engage in meaningful discovery and the development of expert opinions in opposition to the Defendants' MSJ. Although the Cooperative asserts that the Defendants' MSJ is not well-founded, it is in good faith believed that discovery will allow the Cooperative to provide the Court with facts and expert opinions not otherwise available to support denial of Defendants' MSJ. *See* Flink Decl. ¶ 5 and *generally*.

12. Rule 56(d) is designed to curtail a party's attempt to railroad nonmovants by premature summary judgment motions or the improper entry of summary judgment when the nonmoving party has not had an opportunity to exercise pretrial discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (finding that parties claiming they were 'railroaded' by a premature motion for summary judgment have recourse to Rule 56(f)).); *Cf. Xcaliber Int'l Ltd., LLC v. Edmondson*, 2005 U.S. Dist. LEXIS 40448 *24 (N.D. Okla., August 31, 2005). In this case the Cooperative has not had an opportunity to exercise its rightful pretrial discovery to develop facts in the Defendants' and third parties' possession necessary to the Cooperative's opposition to Defendant' MSJ and defense of Defendants' counterclaims. *See generally*, Flink Decl.

7

13.     The Defendants' effort to avoid having this case decided in context is evidenced by Defendants submission of a very limited set of "undisputed facts" related to Mr. Dorn's and Dorn AgCo LLC's status as shareholders of the Cooperative during a very limited timeframe.   Flink Decl. ¶ 6.  Defendants also submitted the Declaration of Richard Dorn limited to that same timeframe. Flink Decl. ¶ 7.

14.     Absent from Defendants' MSJ is any reference to facts relating to Mr. Dorns extensive involvement in establishing the Cooperative, soliciting sugar beet growers to commit to the Cooperative, and defining its relationship with its shareholders.  Also absent from Defendants' MSJ is any reference to facts dating back to the incorporation of the Cooperative (fka Rocky Mountain Sugar Growers Cooperative ("RMSGC")) in 2000 by Richard Dorn as Incorporator and Defendant Dorn's initial purchase of shares in 2000 – facts Defendants deemed relevant to their counterclaims.  *See* Defendants Counterclaims ¶¶ 8-15 (Doc. 15). Flink Decl. ¶ 8.

15.     Defendants' MSJ also incorrectly asserts that "'[w]hether the parties entered into the contract in good faith, and whether they performed the contract according to its terms as irrelevant to the inquiry' as to whether a contract violates public policy. [citations omitted]'". (Doc 28 at 5-6).  Contrary to Defendants' assertion, and as addressed in the Cooperative's Reply supporting dismissal of Defendants' conversion claim (Doc. 27):

> The Cooperative asserts that the annual renewal provisions coupled with the ability to transfer shares in order to disassociate with the Cooperative complies with the statute.  However, even if Defendants' argument that the automatic annual renewal provisions for a period greater than ten (10) years absent a signed agreement are violative of the public policy embodied in C.R.S. § 7-56-502 is adopted by the Court, the automatic renewal provisions are enforceable and not against public policy for each of the ten years after the last signed annual contract.  *See e.g.* RESTATEMENT (SECOND) OF CONTRACTS § 184, "Unenforceability on Grounds of Public Policy-When Rest of Agreement is Enforceable."  Contrary to the Defendants' assertion in footnote 1 of their response (Dkt. 15, p.5), the fact that Mr. Dorn was instrumental in establishing the structure of the Cooperative's relationship with its shareholders and that the Cooperative, acting through Mr. Dorn at its inception, acted in good faith for the mutual benefit of all shareholders, is quite relevant to the enforceability of the annual renewal provisions for at least the first ten (10) years after the last annual contract is signed.  RESTATEMENT (SECOND) OF CONTRACTS § 184 ("(2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing.").

8

Doc. 27. RESTATEMENT (SECOND) OF CONTRACTS § 184 is recognized in Colorado. *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 593 (Colo. 1984); *Santich v. VCG Holding Corp.*, 2018 U.S. Dist LEXIS 140756 *21 (D. Colo. Aug. 20. 2018). Flink Decl. ¶ 17.

16. If this Court were to consider only Defendants' MSJ and Mr. Dorn's Declaration, one might believe that Mr. Dorn first became a shareholder of the Cooperative in or about October 2013 and Dorn AgCo LLC first became a shareholder in or about February 2016. Flink Decl. ¶ 9. Further, one might be misled to believe that the Cooperative's one-year Shareholder Agreement (with its automatic renewal provision) and the Cooperative's Shareholder Agreement and the 2012 Amended and Restated Bylaws were somehow foisted upon Mr. Dorn and Dorn AgCo without their knowledge, understanding, participation, or consent. (Dorn Decl. ¶ 2) and (Dorn Decl. ¶ 6) respectively. Flink Decl. ¶ 10.

17. By this motion, supported by the Flink Declaration, the Cooperative seeks deferral or denial of Defendants' MSJ in order to develop facts through discovery and expert opinions that the Cooperative respectfully submits should be presented to the Court before the Court considers the parties' respective positions on Defendants' MSJ. Stated otherwise, the Cooperative needs discovery from the Defendants and third parties to ensure that the Court has the "full story" before ruling on any motion for summary judgment. *Conway Corp. v. Ahlemeyer*, 754 F. Supp. 604, 606 (N.D. Ill. 1991) ("This Court was of course entitled to treat the litigants' presentations as constituting the full story, exactly as at a trial when both parties have rested and the proofs are closed and the case is submitted to the finder of fact (whether judge or jury) for decision."); *Cf. Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006) ("The crux of Rule 56(f) is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"). Flink Decl. ¶ 11.

18. The Cooperative seeks relief to ensure that critical facts in the possession of but omitted by Defendants are before the Court. *Conway Corp.,* 754 F. Supp. at 606 (quoting *Walker v.*

9

*Hoffman*, 583 F.2d 1073, 1075 (9th Cir. 1978), quoting *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972) ("The non-movant has an affirmative duty to come forward to meet a properly supported motion for summary judgment: …A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.")). Flink Decl. ¶ 12.

19. Although the Cooperative is in the process of gathering historical documents that pertain to Mr. Dorn's extensive involvement and establishment of the Cooperative[7], neither Mr. Dorn nor his son David have ever been deposed with respect to the matters at issue in this current civil action. Flink Decl. ¶ 13.

20. As set forth in the Cooperative's Complaint, Mr. Dorn was the Incorporator of RMSGC and the Chairman of the Board of Directors of RMSCG from the Board's inception until Mr. Dorn's resignation in June 2003. Complaint ¶¶ 21 -87. Mr. Dorn actively solicited growers to join the Cooperative, noting that "throughput is very important" and that "[y]ou have to spread the risk to keep both the Cooperative and the grower viable." *See* Complaint ¶ 68 (Mr. Dorn's letter dated February 21, 2001). In addition, following the acquisition of The Western Sugar Company by RMSGC on April 30, 2002, Mr. Dorn signed the Plan of Merger and Agreement of Merger on behalf of both RMSGC and The Western Sugar Company. Flink Decl. ¶ 14.

21. The Cooperative believes that the historical documents coupled with the deposition of Mr. Dorn will reveal that Mr. Dorn was actively and substantively involved in: (i) the incorporation and creation of the RMSGC; (ii) the selection of the initial Board of Directors of RMSCG which was chaired by Mr. Dorn; (iii) the preparation of an Offering Memorandum (Prospectus) to solicit sugar beet farmers to join the Cooperative; (iv) the solicitation of sugar beet growers to become shareholders of the RMSGC and ultimately the Cooperative; (v) the preparation of the Cooperative's initial Articles of Incorporation, Bylaws, and Subscription Agreement; (vi) the

---

[7] Many of those documents were produced in 2003 and 2004 in connection with the civil action styled *The Western Sugar Cooperative v Cascade Capital, et al. and Richard Dorn*, Case No. 03-MK-1513 (PAC) USDC D. Colorado and in 2008 and 2009 in connection with the *Luft Farms* Litigation.

acquisition of and merger with The Western Sugar Company; (vii) overseeing as Chairman of the Cooperative's Board the creation of the first Shareholders Agreement in 2003 which he signed in March 2003 (Exhibit A to Flink Decl.) which provided for an annual term with an automatic renewal and liquidated damages; and (viii) the creation of other initial documents necessary to establish and that defined the relationship between the Cooperative and shareholders in conformity with Colorado law.  Although the Cooperative has certain historical documents relating to these matters, it does not know if it has all of Mr. Dorn's documents.  The Cooperative also does not have Mr. Dorn's deposition testimony relating to these matters relevant to the Cooperative's claims and Defendants' mirror-image claims and Mr. Dorn's characterization of the structure and organization he was instrumental in establishing as being "modern day peonage" and "*in terrorem*" contract provisions. Flink Decl. ¶ 15.

22. Mr. Dorn signed a Shareholder Agreement each year from 2003 through and until 2018 (possibly with the exception of 2006).  *See* Proposed Scheduling Order, Undisputed Facts (Doc. 32). The Shareholder Agreement Mr. Dorn signed in 2003 while Chairman of the Board provided for automatic renewal.  Complaint and Answer ¶ 142; Exhibit A (2003 Shareholder Agreement).  The 2003 Shareholder Agreement signed by Mr. Dorn also contained in Section 2.8(d) a liquidated damages provision.  Flink Decl. ¶ 16; Exhibit A.

23. In addition to developing facts relevant to application of RESTATEMENT (SECOND) OF CONTRACTS § 184 if the automatic renewal and liquidated damages provisions are found not in compliance with Colorado's Cooperative Act and public policy underlying that Act, the deposition of Richard Dorn and David Dorn are necessary to develop facts that can be used in support of the Cooperative's defenses of laches, estoppel, waiver, and failure to mitigate, among other defenses, to the Defendants' counterclaims, which are also relevant to the Cooperative's opposition to Defendants' MSJ.  Flink Decl. ¶ 17.

24. As relates to the issues of laches, estoppel, waiver, and failure to mitigate, it is reasonably believed that shareholders of the Cooperative, including Richard Dorn, had knowledge sometime between September 2008 and January 2011 that Cooperative shareholders Luft Farms LLC and Alan Reuter commenced a putative class

action challenging, among other issues, (a) the authority of the Cooperative to "restrict[] or impose[] conditions on members' ability to terminate their contractual relationship with and membership obligations to the Cooperative prior to the commencement of any crop year"; and (b) that "[t]he Cooperative is not and has never been empowered or authorized to impose liquidated damage penalties on growers." *Luft Farms* Litigation, Complaint ¶ 104.  Discovery relating to this knowledge is relevant and material to the issues of laches, estoppel, waiver, and failure to mitigate evidenced by the Defendants continuing to sign Shareholder Agreements each year, acquiring additional shares over time, failing to make any effort to withdraw from the Cooperative by transferring shares to another eligible member, and/or to earlier challenge the contractual provisions that have existed in one form or another since 2003. Flink Decl. ¶ 18.

25.  In the Court's February 20, 2009 Order in *Luft Farms*, the Court noted how **shareholders were placed on notice regarding issues relating to termination, renewal, and liquidated damages in the Offering Memorandum and the 2003 Shareholders Agreement**, yet "Plaintiffs Allen and Connie Reuter became initial shareholders and signed without objection Shareholder Agreements for Crop Years 2003, 2004, 2005, 2006, and 2007, which contained the same renewal and liquidated damages provisions." See Complaint ¶115; see also Complaint ¶116 (January 7, 2011 Order).  Flink Decl. ¶ 19.

26.  Mr. Dorn executed the Cooperative's Shareholder Agreement every year between 2003 and 2018." Complaint and Answer ¶ 119.  In addition, after Dorn AgCo was incorporated in December 2011 [Complaint and Answer ¶110], and "[o]n January 30, 2012, Mr. Dorn and his son David A. Dorn, as the members of Dorn AgCo, LLC, signed a Subscription Agreement to purchase one (1) share of common stock in the Cooperative," [Complaint ¶111] "Mr. Dorn, on behalf of Dorn AgCo, LLC, executed the Cooperative's Shareholder Agreement for each year between 2012 and 2018." Complaint and Answer ¶123. Flink Decl. ¶ 20.

27.  Not only did Mr. Dorn and Dorn AgCo, sign Shareholder Agreements year after year, in 2013 Mr. Dorn increased his share ownership by purchasing thirty (30) additional Patron Preferred Shares [Answer and

12

Case No. 1:20-cv-00956-PAB-KLM   Document 38   filed 09/18/20   USDC Colorado
pg 13 of 16

Complaint ¶ 96] and in 2016 Dorn AgCo increased its share ownership by purchasing from Dorn Farms, Inc. 100 additional shares of Patron Preferred Shares [Answer and Complaint ¶108].  Flink Decl. ¶ 21.

28. With respect to liquidated damages allowed by Section 503 of the Cooperative Act [C.R.S. § 7-56-503] and provided for in the Cooperative's May 2012 Amended and Restated Bylaws, Defendants assert that such damages are not enforceable against them. However, in 2012, shareholders voted to approve the Amended Bylaws and the liquidated damages provision included therein by a vote of 300 to 90. Flink Decl. ¶ 22. As noted by the Washington Supreme Court, "we conclude it would be bad judicial policy to start telling an agricultural cooperative how it should do business." *Nakata v. Blue Bird, Inc.*, 191 P.3d 900, 904 (Wash. 2008).

29. In order to be able to more fully develop facts necessary to respond to and oppose Defendants' MSJ, the Cooperative will need to serve written discovery on Mr. Dorn and take his deposition to develop facts relating to the relationship between the Cooperative and shareholders who own it and his involvement in the creation of the renewal and liquidated damages provisions that Mr. Dorn now challenges. The deposition will also uncover, *inter alia*, why Mr. Dorn continued to sign shareholder agreements each year with provisions he now contends imposed "peonage" and "*in terrorem*" requirements; why he increased the number of shares owned; why he convinced his son to join him in creating a new entity, Dorn AgCo, LLC, to become a shareholder of and obligate it to grow sugar beets for the Cooperative; why he did not make any efforts for years to sell his shares in order to withdraw from and terminate his obligations to the Cooperative; why he accepted all the benefits of being a member of the Cooperative and never sought to challenge the validity and enforceability of the contractual obligations imposed on all shareholders; and why he convinced his son to agree that Dorn AgCo should not sign a Shareholder Agreement in 2019 or thereafter. The deposition also will reveal whether Mr. Dorn participated in the vote to approve the 2012 Amended Bylaws and if he participated, how he voted.   Flink Decl. ¶ 23.

30. In order to fully develop facts necessary to respond to and oppose Defendants' MSJ, the Cooperative will need to serve written discovery on Dorn AgCo, LLC and take the depositions of Richard Dorn

13

and David Dorn relating to the discussions between Richard Dorn and David Dorn about why Dorn AgCo LLC joined a Cooperative that is now alleged to have had "peonage" and "*in terrorem*" provisions in its Shareholder Agreements dating back to 2003; why Dorn AgCo more than doubled the number of shares it owned in 2016 by purchasing 100 Patron Preferred Shares; why David Dorn joined Richard Dorn to form Dorn AgCo, LLC to become a shareholder of the Cooperative; and what was discussed between Richard and David Dorn relating to Dorn AgCo, LLC not signing a Shareholder Agreement in 2019 and thereafter.  Flink Decl. ¶ 24.

31. In order to develop facts necessary to respond to and oppose Defendants' MSJ, the Cooperative will also need to retain expert witnesses to address the structure of NGCs, the public policy considerations in their structure and relationship with shareholders, and the reasons for the need for contractual provisions at issue and how they serve the mutual benefit of all members.  Contrary to arguments in Defendants' MSJ, the shareholders of an NGC not only owe obligations to the Cooperative but also to all other shareholders for their mutual benefit. As stated in the Articles of Incorporation signed by Mr. Dorn, Mr. Dorn incorporated the Cooperative "for the mutual benefit of its members." Exhibit 1 Art. 3 § 1 ("The cooperative's business is carried on for the mutual benefit of its members….")*; see also*, C.R.S. §7-56-103(6)(d)(A "'Cooperative' … [has] the following characteristics:…(d) The cooperative's business is carried on for the mutual benefit of its members….) ; C.R.S. § 7-56-208(3)(h) ("(3) If not stated in the articles, the bylaws of the cooperative shall include:… (h) A requirement that the cooperative's business shall be conducted on a cooperative basis for the mutual benefit of the cooperative's members."); *Industrial Com. v. United Fruit Growers Ass'n*, 103 P.2d 15, 17, 1940 Colo. LEXIS 222, *6-7 ("The basic conception of an agricultural cooperative association is that of a group of farmers … acting together for their mutual benefit in the cultivating, harvesting and marketing of their agricultural products…)..  An expert can explain, among other opinions, how the relief sought by Defendants will undermine the public policy underlying Cooperative statutes with marketing contract provisions similar to Section 502.  Flink Decl. ¶ 25.

32. In order to develop facts necessary to respond to and oppose Defendants' MSJ that asserts that

14

common law principles relating to liquidated damages apply in the cooperative setting rather than The Cooperative Act's provision providing for liquidated damages [C.R.S. § 7-56-503], the Cooperative will need to retain an expert witness to address the basis and reasonableness of the amount of liquidated damages assessed by the Cooperative. *See also Luft Farms, LLC v. Western Sugar Coop.*, 2011 U.S. Dist. LEXIS 1658, *13-14, 2011 WL 66122 (D. Colo. Jan. 7, 2011) ("It is worth noting that the Colorado Cooperative Act expressly allows for the imposition of liquidated damages against a grower who fails to meet delivery obligations."). Flink Decl. ¶ 26.

33. As addressed above, Defendants filed their Motion for Summary Judgment on September 4, 2020, two weeks before the Scheduling Conference. Defendants were not required to and did not confer prior to filing Defendants' MSJ. Because the parties had not yet engaged in discovery, there were no past steps that the Cooperative could have engaged in to depose Richard Dorn, David Dorn, Jones Waldo attorneys and possible other parties with respect to the claims asserted in this civil action. Flink Decl. ¶ 27. Deferring or denying Defendants' MSJ will allow the Cooperative to engage in orderly discovery and to retain experts to rebut the Defendants' MSJ arguments. Flink Decl. ¶ 28.

## CONCLUSION

The Western Sugar Cooperative respectfully requests that the Court grant this Motion and defer or deny Defendants' MSJ in order to allow the Cooperative to engage in orderly discovery and to retain experts to rebut the Defendants' MSJ arguments, that the Court stay any further briefing on Defendants' MSJ, and that the Court enter such other relief as this Court deems just and proper.

Dated: September 18, 2020.

/s/ *Marc D. Flink*
Marc D. Flink, (12793)
Michelle R. Gomez, (51057)
Baker & Hostetler LLP
1801 California Street, Suite 4400
Denver, CO 80202
*Attorneys for The Western Sugar Cooperative*

15

## CERTIFICATE OF SERVICE

  I hereby certify that on September 18, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Paul J. Lopach
Stephen D. Rynerson
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203

Cory R. Laird, Esq.
LAIRD COWLEY, PLLC
2955 Stockyard Road
Missoula, MT 59808

                *s/   Marc D. Flink*