## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00956-PAB-KLM

The Western Sugar Cooperative,

     Plaintiff,

v.

Richard Dorn and Dorn AgCo, LLC,

     Defendants.

---

## DECLARATION OF MARC D. FLINK IN SUPPORT OF PLAINTIFF'S MOTION PURSUANT TO FED. R. CIV. P. 56(d)

---

I, Marc D. Flink, declare as follows:

1.     I am one of the attorneys for Plaintiff The Western Sugar Cooperative (the "Cooperative" or "Western Sugar"). I submit this Declaration in support of the Cooperative's motion pursuant to Fed. R. Civ. P. 56(d). I have personal knowledge of matters set forth in this Declaration and the statements in this Declaration are true and correct to the best of my knowledge information and belief. If called to testify would be competent to testify thereto.

2.     To obtain relief under Rule 56(d), the movant must submit an affidavit or declaration (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment. *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017); *see also, Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("The parties had conducted discovery, and no serious claim can be made that respondent was in any sense "railroaded" by a premature motion for summary judgment. Any potential problem with such premature motions can be adequately dealt with under Rule 56(f)

[now 56(d)], which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery.").

3.    On September 4, 2020, Defendants Richard Dorn and Dorn AgCo, LLC filed a Motion for Summary Judgment ("Defendants' MSJ") requesting that the Court enter summary judgment against the Cooperative as to each of the Cooperative's claims. Although the Defendants' Counterclaims relating to the renewal and liquidated damages provisions of the Shareholder Agreement and corporate governing documents at issue are mirror images of many of the Cooperative's claims, the Defendants have not sought summary judgment as to their counterclaims.

4.    The parties have exchanged initial disclosures. The Scheduling Conference is scheduled for September 21, 2020. The proposed Scheduling Order submitted to the Court on September 14, 2020 and not yet entered by the Court provides for a discovery cut-off date of May 21, 2021 and an expert disclosure date of February 19, 2021.

5.    This is not a situation where a party has sat on its hands in discovery and is now attempting to conduct new discovery. *Cf. Diversant, LLC v. Carino*, 2018 U.S. Dist. LEXIS 165012 *21 (D. N.J. Sept. 24, 2018). As of the filing of this motion, no discovery has been undertaken by any party. Although the Cooperative asserts that the Defendants' MSJ is not well-founded, it is in good faith believed that discovery will allow the Cooperative to provide the Court with facts and expert opinions not otherwise available to support denial of Defendants' MSJ.

6.    In support of Defendants' MSJ, Defendants submitted a very limited set of "undisputed facts" related to Mr. Dorn's and Dorn AgCo LLC's status as shareholders of the Cooperative during a very limited timeframe.

7.    In support of Defendants' MSJ, Defendants also submitted the Declaration of Richard Dorn limited to that same timeframe.

8.      Absent from Defendants' MSJ is any reference to facts relating to Mr. Dorns extensive involvement in establishing the Cooperative, soliciting sugar beet growers to commit to the Cooperative, and defining its relationship with its shareholders. Also absent from Defendants' MSJ is any reference to facts dating back to the incorporation of the Cooperative (fka Rocky Mountain Sugar Growers Cooperative ("RMSGC")) in 2000 by Richard Dorn as Incorporator and Defendant Dorn's initial purchase of shares in 2000 – facts Defendants deemed relevant to their counterclaims. *See* Defendants Counterclaims ¶¶ 8-15 (Doc. 15).

9.      If this Court were to consider only Defendants' MSJ and Mr. Dorn's Declaration, one might believe that Mr. Dorn first became a shareholder of the Cooperative in or about October 2013 and Dorn AgCo LLC first became a shareholder in or about February 2016.

10.     Further, one might be misled to believe that the Cooperative's one-year Shareholder Agreement (with its automatic renewal provision) and the Cooperative's Shareholder Agreement and the 2012 Amended and Restated Bylaws were somehow foisted upon Mr. Dorn and Dorn AgCo without their knowledge, understanding, participation, or consent. *See* Dorn Decl. ¶ 2 and Dorn Decl. ¶ 6, respectively.

11.     The Cooperative seeks deferral or denial of Defendants' MSJ in order to develop facts through discovery and expert opinions that the Cooperative respectfully submits should be presented to the Court before the Court considers the parties' respective positions on Defendants' MSJ. Stated otherwise, the Cooperative needs discovery from the Defendants and third parties to ensure that the Court has the "full story" before ruling on any motion for summary judgment.

12.     The Cooperative seeks relief to ensure that critical facts in the possession of but omitted by Defendants are before the Court. *Conway Corp.,* 754 F. Supp. at 606 (quoting *Walker v. Hoffman,* 583 F.2d 1073, 1075 (9th Cir. 1978), quoting *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir. 1972) ("The non-movant has an affirmative duty to come forward to meet a properly supported motion for summary judgment: 'A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks

the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.'").

13.     The Cooperative is in the process of gathering historical documents that pertain to Mr. Dorn's extensive involvement and establishment of the Cooperative.   Many of those documents were produced in 2003 and 2004 in connection with the civil action styled *The Western Sugar Cooperative v Cascade Capital, et al. and Richard Dorn*, Case No. 03-MK-1513 (PAC) USDC D. Colorado and in 2009 in connection with *Left Farms LLC and Alan Reuter v The Western Sugar Cooperative*, Civil Action No. 1:08-cv-02014-WYD-CBS, United States District Court for the District of Colorado, Complaint ¶ 104 ("*Left Farms* Litigation").  Neither Mr. Dorn nor his son David have ever been deposed with respect to the matters at issue in this current civil action.

14.     As set forth in the Cooperative's Complaint, Mr. Dorn was the Incorporator of RMSGC and the Chairman of the Board of Directors of RMSCG from the Board's inception until Mr. Dorn's resignation in June 2003.   Complaint ¶¶ 21 -87.   Mr. Dorn actively solicited growers to join the Cooperative, noting that "throughput is very important" and that "[y]ou have to spread the risk to keep both the Cooperative and the grower viable."  See Complaint ¶ 68 (Mr. Dorn's letter dated February 21, 2001).  In addition, following the acquisition of The Western Sugar Company by RMSGC on April 30, 2002, Mr. Dorn signed the Plan of Merger and Agreement of Merger on behalf of both RMSGC and The Western Sugar Company.

15.     The Mr. Dorn received the law firm of Jones Waldo Holbrook & McDonough ("Jones Waldo")) assisting Mr. Dorn and the Board in 2000-2002 in the creation of the Cooperative indicate that Mr. Dorn was in weekly, if not sometimes daily communication with Randon Wilson, the primary attorney handling the matter. The Jones Waldo invoices and other historical documents reveal that Mr. Dorn was involved in:

      i.    the incorporation and creation of the RMSGC;

      ii.    the selection of the initial Board of Directors of RMSCG which was chaired by Mr. Dorn;

    iii.   the preparation of an Offering Memorandum (Prospectus) to solicit sugar beet farmers to join the Cooperative;

    iv.   the solicitation of sugar beet growers to become shareholders of the RMSGC and the Cooperative;

    v.   the preparation of the Cooperative's initial Articles of Incorporation, Bylaws, and Subscription Agreement;

    vi.   the acquisition of The Western Sugar Company;

    vii.   overseeing as Chairman of the Cooperative's Board the creation of the first Shareholders Agreement in 2003 which he signed in March 2003 which provided for an annual term with an automatic renewal and liquidated damages.  A copy of the Shareholder Agreement Mr. Dorn signed in March 2003 is submitted herewith as Exhibit A; and

    viii.  the creation of other initial documents necessary to establish and that defined the relationship between the Cooperative and shareholders in conformity with Colorado law.

Although the Cooperative has historical documents relating to these matters, it does not know if it has all of Mr. Dorn's documents and does not have Mr. Dorn's deposition testimony relating to these matters relevant to the Cooperative's claims and Defendants' mirror-image claims and Mr. Dorn's characterization of the structure and organization he was instrumental in establishing as "modern day peonage" and "*in terrorem*" contract provisions

    16.    Mr. Dorn signed his first Shareholder Agreement in March 2003 and signed a Shareholder Agreement each year through and until 2018 (possibly with the exception of 2006).  The Defendants admit that the Shareholder Agreement Mr. Dorn signed in 2003 while Chairman of the Board provided for automatic renewal.  Complaint and Answer ¶142.  The 2003 Shareholder Agreement signed by Mr. Dorn also contained in Section 2.8(d) a liquidated damages provision if the shareholder is in breach of the shareholder's contractual obligations.

17.     As asserted in the Cooperative's briefing in support of its Motion to Dismiss Defendants' Sixth

Counterclaim Pursuant to Fed.R.Civ.P. 12(B)(6) [Doc. 19 and 27]:

> The Cooperative asserts that the annual renewal provisions coupled with the ability to
> transfer shares in order to disassociate with the Cooperative complies with the statute.
> However, even if Defendants' argument that the automatic annual renewal provisions
> for a period greater than ten (10) years absent a signed agreement are violative of the
> public policy embodied in C.R.S. § 7-56-502 is adopted by the Court, the automatic
> renewal provisions are enforceable and not against public policy for each of the ten years
> after the last signed annual contract. *See e.g.* RESTATEMENT (SECOND) OF
> CONTRACTS § 184, "Unenforceability on Grounds of Public Policy-When Rest of
> Agreement is Enforceable." Contrary to the Defendants' assertion in footnote 1 of
> their response (Dkt. 15, p.5), the fact that Mr. Dorn was instrumental in establishing the
> structure of the Cooperative's relationship with its shareholders and that the
> Cooperative, acting through Mr. Dorn at its inception, acted in good faith for the mutual
> benefit of all shareholders, is quite relevant to the enforceability of the annual renewal
> provisions for at least the first ten (10) years after the last annual contract is signed.
> RESTATEMENT (SECOND) OF CONTRACTS § 184 ("(2) A court may treat only
> part of a term as unenforceable under the rule stated in Subsection (1) if the party who
> seeks to enforce the term obtained it in good faith and in accordance with reasonable
> standards of fair dealing.").

Doc. 27. RESTATEMENT (SECOND) OF CONTRACTS § 184 is recognized in Colorado. *Meyer v. State farm*

*Mut. Auto. Ins. Co.*, 689 P.2d 585, 593 (Colo. 1984); *Santich v. VCG Holding Corp.*, 2018 U.S. Dist LEXIS 140756

*21 (D. Colo. Aug. 20. 2018).   The discovery and depositions sought by the Cooperative are necessary to deveopy

facts relating to good faith and fair dealing related to the application of RESTATEMENT (SECOND) OF

CONTRACTS § 184 if the automatic renewal and liquidated damages provisions are found not in compliance

with Colorado's Cooperative Act and public policy underlying that Act.   In addition to developing facts relevant

to application of RESTATEMENT (SECOND) OF CONTRACTS § 184 if the automatic renewal and

liquidated damages provisions are found not in compliance with Colorado's Cooperative Act and public policy

underlying that Act, the deposition of Richard Dorn and David Dorn are necessary to develop facts that can be

used in support of the Cooperative's defenses of laches, estoppel, waiver, and failure to mitigate, among other

defenses, to the Defendants' counterclaims, which are also relevant to the Cooperative's opposition to Defendants' MSJ.

18.      As relates to the issues of laches, estoppel, waiver, and failure to mitigate, it is reasonably believed that shareholders of the Cooperative, including Richard Dorn, had knowledge sometime between September 2008 and January 2011 that Cooperative shareholders Luft Farms LLC and Alan Reuter commenced a putative class action challenging, among other issues, (a) the authority of the Cooperative to "restrict[] or impose[] conditions on members' ability to terminate their contractual relationship with and membership obligations to the Cooperative prior to the commencement of any crop year"; and (b) that "[t]he Cooperative is not and has never been empowered or authorized to impose liquidated damage penalties on growers." *Luft Farms* Litigation, Complaint ¶ 104.  Discovery relating to this knowledge is relevant and material to the issues of laches, estoppel, waiver, and failure to mitigate evidenced by the Defendants continuing to sign Shareholder Agreements each year, acquiring additional shares over time, failing to make any effort to withdraw from the Cooperative by transferring shares to another eligible member, and/or to earlier challenge the contractual provisions that have existed in one form or another since 2003.

19.      In the Court's February 20, 2009 Order in the *Luft Farms* Litigation, the Court noted how **shareholders were placed on notice regarding issues relating to termination, renewal, and liquidated damages in the Offering Memorandum and the 2003 Shareholders Agreement**, yet "Plaintiffs Allen and Connie Reuter became initial shareholders and signed without objection Shareholder Agreements for Crop Years 2003, 2004, 2005, 2006, and 2007, which contained the same renewal and liquidated damages provisions."  See Complaint ¶115; see also Complaint ¶116 (January 7, 2011 Order).  As stated, as Chairman of the Cooperative's Board of Directors from inception until sometime in 2003, Mr. Dorn participated in the creation of the Articles of Incorporation, Bylaws, Offering Memorandum, and the 2003 Shareholders Agreement.

20.     As set forth in the Complaint and admitted by Defendants, Mr. Dorn executed the Cooperative's Shareholder Agreement every year between 2003 and 2018." Complaint and Answer ¶119.[1]  In addition, after Dorn AgCo was incorporated in December 2011 [Complaint and Answer ¶110], and "[o]n January 30, 2012, Mr. Dorn and his son David A. Dorn, as the members of Dorn AgCo, LLC, signed a Subscription Agreement to purchase one (1) share of common stock in the Cooperative," [Complaint ¶111] "Mr. Dorn, on behalf of Dorn AgCo, LLC, executed the Cooperative's Shareholder Agreement for each year between 2012 and 2018." Complaint and Answer ¶123.

21.     In 2013 Mr. Dorn increased his share ownership by purchasing thirty (30) additional Patron Preferred Shares from another grower [Answer and Complaint ¶ 96] and in 2016 Dorn AgCo increased its share ownership by purchasing from Dorn Farms, Inc. 100 additional shares of Patron Preferred Shares [Answer and Complaint ¶108].  It is believed that Dorn Farms, Inc. is owned by persons related to Mr. Dorn.

22.     With respect to liquidated damages allowed by Section 503 of the Cooperative Act [C.R.S. § 7-56-503] and provided for in the Cooperative's May 2012 Amended and Restated Bylaws, Defendants assert that such damages are not enforceable against them.  However, in 2012, shareholders voted to approve the Amended Bylaws and the liquidated damages provision included therein by a vote of 300 to 90.

23.     In order to be able to more fully develop facts necessary to respond to and oppose Defendants' MSJ, the Cooperative will need to serve written discovery on Mr. Dorn and take his deposition to develop facts relating to the relationship between the Cooperative and shareholders who own it and his involvement in the creation of the renewal and liquidated damages provisions that Mr. Dorn now challenges.  The deposition will also uncover, inter alia, why Mr. Dorn continued to sign shareholder agreements each year with provisions he now

---

[1] There is some uncertainty as to whether Mr. Dorn signed a Shareholder Agreement in 2006.  To date, neither the Cooperative nor Mr. Dorn have yet been able to locate a signed 2006 Shareholder Agreement.

contends imposed "peonage" and "in terrorem" requirements; why he increased the number of shares owned; why he convinced his son to join him in creating a new entity, Dorn AgCo, LLC, to become a shareholder of and obligate it to grow sugar beets for the Cooperative; why he did not make any efforts for years to sell his shares in order to withdraw from and terminate his obligations to the Cooperative; why he accepted all the benefits of being a member of the Cooperative and never sought to challenge the validity and enforceability of the contractual obligations imposed on all shareholders; and why he convinced his son to agree that Dorn AgCo should not sign a Shareholder Agreement in 2019 or thereafter. The deposition also will reveal whether Mr. Dorn participated in the vote to approve the 2012 Amended Bylaws and if he participated, how he voted.

24.     In order to fully develop facts necessary to respond to and oppose Defendants' MSJ, the Cooperative will need to serve written discovery on Dorn AgCo, LLC and take the depositions of Richard Dorn and David Dorn relating to the discussions between Richard Dorn and David Dorn about why Dorn AgCo LLC joined a Cooperative that is now alleged to have had "peonage" and "*in terrorem*" provisions in its Shareholder Agreements dating back to 2003; why DornAgCo more than doubled the number of shares it owned in 2016 by purchasing 100 Patron Preferred Shares; why David Dorn joined Richard Dorn to form Dorn AgCo, LLC to become a shareholder of the Cooperative; and what was discussed between Richard and David Dorn relating to Dorn AgCo, LLC not signing a Shareholder Agreement in 2019 and thereafter.

25.     In order to develop facts necessary to respond to and oppose Defendants' MSJ, the Cooperative will also need to retain expert witnesses to address the structure of NGCs, the public policy considerations in their structure and relationship with shareholders, and the reasons for the need for contractual provisions at issue and how they serve the mutual benefit of all members.  Contrary to arguments in Defendants' MSJ, the shareholders of an NGC not only owe obligations to the Cooperative but also to all other shareholders for their mutual benefit. As stated in the Articles of Incorporation signed by Mr. Dorn, Mr. Dorn incorporated the Cooperative "for the mutual benefit of its members." Exhibit 1 Art. 3 § 1 ("The cooperative's business is carried on for the mutual

benefit of its members…."); see also, C.R.S. §7-56-103(6)(d)(A "'Cooperative' … [has] the following characteristics:…(d) The cooperative's business is carried on for the mutual benefit of its members….) ; C.R.S. § 7-56-208(3)(h) ("(3) If not stated in the articles, the bylaws of the cooperative shall include:… (h) A requirement that the cooperative's business shall be conducted on a cooperative basis for the mutual benefit of the cooperative's members."); *Industrial Com. v. United Fruit Growers Ass'n*, 103 P.2d 15, 17, 1940 Colo. LEXIS 222, *6-7 ("The basic conception of an agricultural cooperative association is that of a group of farmers who reside in the same vicinity acting together for their mutual benefit in the cultivating, harvesting and marketing of their agricultural products, and the association itself, with the special powers and limitations conferred by statute, is merely a convenient instrumentality in the hands of the farmers for carrying on such activities."). An expert can explain, among other opinions, how the relief sought by Defendants will undermine the public policy underlying Cooperative statutes with marketing contract provisions similar to Section 502.

26.    In Order to be able to more fully develop facts necessary to respond to and oppose Defendants' MSJ that asserts that common law principles relating to liquidated damages apply in the cooperative setting rather than The Cooperative Act's provision providing for liquidated damages [C.R.S. § 7-56-503], the Cooperative will need to retain an expert witness to address the basis and reasonableness of the amount of liquidated damages assessed by the Cooperative. *See also Lyft Farms, LLC v. Western Sugar Coop.*, 2011 U.S. Dist. LEXIS 1658, *13-14, 2011 WL 66122 (D. Colo. Jan. 7, 2011) ("It is worth noting that the Colorado Cooperative Act expressly allows for the imposition of liquidated damages against a grower who fails to meet delivery obligations. See C.R.S. § 7-56-503(1) ("All such provisions shall be valid and enforceable in the courts of this state and clauses providing for liquidated damages shall be enforceable as such and shall not be regarded as penalties.").

27.    As addressed above, Defendants filed their Motion for Summary Judgment on September 4, 2020, two weeks before the Scheduling Conference.   Defendants were not required to and did not confer prior to filing Defendants' MSJ. Because the parties had not yet engaged in discovery, there were no past steps that the

Cooperative could have engaged in to depose Richard and David Dorn and Jones Waldo attorneys with respect to the claims asserted in this civil action.

28.    As address above, deferring or denying Defendants' MSJ will allow the Cooperative to engage in orderly discovery and to retain experts to rebut the Defendants' MSJ arguments in order to present facts, opinions and arguments the Cooperative believes are critical to place before the Court before the Court considers Defendants' MSJ.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 18, 2020.

Marc D. Flink